IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:12cr00102 |
| v. | ) | Civil Action No. 7:14cv80725 |
| | ) | |
| ASHLEI RENEE ROBINSON, | ) | By:   Joel C. Hoppe |
|     Defendant. | ) | United States Magistrate Judge |

REPORT AND RECOMMENDATION

Ashlei Renee Robinson, a federal inmate proceeding *pro se*, filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence ("Petition"). ECF No. 52.[1] The Government filed a motion to dismiss to which Robinson has responded. The matter is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 65. Having considered the parties' filings, the criminal case record, and the applicable law, I find that Robinson's Petition can be summarily dismissed. The record conclusively shows that Robinson is not entitled to relief on any of her claims.

I. Standard of Review

A prisoner claiming the right to be released from a federal sentence must show that the district court did not have jurisdiction to impose the sentence; the sentence was imposed in violation of the Constitution or laws of the United States; the sentence exceeded the maximum penalty allowed by law; or the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a)–(b); *Michel v. United States*, Nos. 5:06cr41, 5:10cv80281, 2011 WL 767389, at *1 (W.D. Va. Feb. 25, 2011) (Conrad, C.J.). The prisoner ultimately must prove her grounds for

---

[1] ECF numbers refer to entries on the criminal case docket.

1

relief by a preponderance of the evidence. *United States v. White*, 366 F.3d 291, 297 (4th Cir. 2004).

On the Government's motion to dismiss, however, the court determines only whether "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord White*, 366 F.3d at 296–97. Summary dismissal is not appropriate when the prisoner alleges facts that, if true, would entitle her to relief on her particular claim. *See White*, 366 F.3d at 297. The court may not reject the prisoner's factual allegations unless they are "palpably incredible" or "patently frivolous or false" when viewed against the whole record. *Id.* The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the prisoner's filings state a claim for relief under section 2255. *See United States v. Stokes*, 112 F. App'x 905, 906 (4th Cir. 2004) (citing *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970)).

## II. Background

On December 13, 2012, a grand jury in the Western District of Virginia charged Robinson with one count of knowingly and willfully conspiring "to distribute and possess with intent to distribute five hundred (500) grams or more of a mixture or substance containing methamphetamine," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Indictment 1, ECF No. 3. The Court appointed Wayne D. Inge, Esq., to represent Robinson. ECF No. 8.

Robinson and the Government entered into a written plea agreement. *See* Plea Agmt. 1, ECF No. 24. Robinson would plead guilty to Count One, which carried a mandatory minimum sentence of ten years and a statutory maximum of life imprisonment, and the Government would "recommend a sentence at the low end of the applicable guideline range." *Id.* at 1, 3. The parties agreed that a base-offense level of 34 under guideline section 2D1.1, which indicated that

Robinson's conduct involved "more than 1.5 but less than 5 kilograms of meth mixture," should apply at sentencing. *Id.* at 3. They also stipulated that the Court was not bound by this recommendation and could sentence Robinson up to the statutory maximum of life in prison. *Id.* at 1, 3.

On April 11, 2013, Robinson appeared with counsel for a change-of-plea hearing before Chief United States District Judge Glen E. Conrad. *See generally* Plea Hr'g Tr. 1–51, ECF No. 60. Judge Conrad asked Robinson whether she understood the terms of her plea agreement, the elements of the offense charged, the mandatory minimum and potential maximum penalties she faced if convicted, and all of the rights she was giving up by pleading guilty under her agreement. *See id.* at 10–11, 14 (terms); *id.* at 3, 9–10, 15, 33, 34–35, 41–42 (elements); *id.* at 9, 33, 34, 40 (penalties); *id.* at 10, 15–16, 24–32 (waiver). Judge Conrad also discussed the Court's role in calculating Robinson's sentence under the advisory guidelines and explained that Robinson was not guaranteed a particular sentence by pleading guilty. *See id.* at 14–15, 17–19, 20, 21–22. Robinson testified that she understood the Court's admonishments, had not been promised a particular sentence, and wanted to plead guilty. *See generally id.* at 7–11, 13–23, 25–32, 32–36, 38, 39–41, 42. Judge Conrad accepted Robinson's guilty plea and ordered her released on conditions pending sentencing so she could receive medical care. *See id.* at 42, 44–51.

On May 21, 2013, Robinson's probation officer petitioned the Court to set a bond violation hearing. ECF No. 29. The officer alleged that a "urine screen revealed the recent use of cocaine and methamphetamine," a violation of the condition that Robinson not unlawfully use any controlled substances. *Id.* Judge Conrad issued a summons and set the hearing for June 4, 2013. *See id.* The summons was executed by mail and returned on May 28, 2013. ECF No. 31.

Robinson did not appear at the June 4 hearing. The Court issued an arrest warrant and reset the hearing for July 3, 2013. Robinson was arrested on July 2, 2013, and appeared with counsel the next day. *See* Bond Revocation Hr'g Tr. 8, ECF No. 59. Judge Conrad found that Robinson violated the terms of her release when she vacated her approved residence, failed to report to her probation officer, and tested positive for controlled substances. *See id.* at 12. He ordered her detained pending sentencing.

Robinson's Presentence Investigation Report ("PSR") initially provided a sentencing guideline range of 135 to 168 months in prison, which reflected the parties' recommended base-offense level and a three-level downward departure for accepting responsibility. *See* Sent. Hr'g Tr. 7, 12. The PSR was amended after Robinson's bond was revoked on July 3. *See* PSR 1, 5–7. The new guideline calculation took away acceptance of responsibility and added two levels for obstruction of justice, resulting in a range of imprisonment of 235 to 293 months. *See id.* at 6–7, 15; Sent. Hr'g Tr. 12. The Court found that the PSR accurately calculated Robinson's final guideline range. *See* Sent. Hr'g Tr. 18.

On October 4, 2013, Judge Conrad sentenced Robinson to 194 months in prison followed by five years on supervised release. *See* Judgment 2–4, ECF No. 46. The Court entered the judgment of conviction the same day, and Robinson did not appeal. Robinson timely filed this petition to vacate, set aside, or correct her sentence. The Government moved to dismiss the Petition, ECF No. 61, and Robinson responded, ECF No. 63. The motion to dismiss is ripe for review and can be resolved on the existing record. *See* 28 U.S.C. § 2255(b) (the district court may summarily dismiss a 2255 motion if "the files and records of the case conclusively show that the prisoner is entitled to no relief"); *United States v. Ray*, 547 F. App'x 343, 345 (4th Cir. 2013) (per curiam) (noting that an evidentiary hearing is required if the prisoner presents a

"colorable" claim for relief under § 2255 "showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue" (citing *United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000)).

### III. Discussion

Robinson challenges her prison sentence, asserting that Mr. Inge was ineffective during plea negotiations and sentencing. *See* Pet. 3–4, 4–5, 6–7. The Government responds that Robinson waived her right to collaterally attack her sentence under the terms of her plea agreement and that her petition does not state any claim for relief based on ineffective assistance of counsel. *See* Mot. to Dismiss 4–6, 6–7.

A. *Waiver*

A criminal defendant may waive her right to attack her sentence collaterally, so long as that waiver is knowing and voluntary. *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Courts generally will enforce such waivers against any claim falling within the waiver's scope. *See id.*; *United States v. Brantley*, 546 F. App'x 163, 164 (4th Cir. 2013) (per curiam); *United States v. Saint-Jean*, 684 F. Supp. 2d 767, 775–76 (W.D. Va. 2010) (Conrad, J.).

In her plea agreement, Robinson expressly agreed to "waive any right [she] may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel." Plea Agmt. 7. Robinson's claims, liberally construed, are all "based on" Mr. Inge's allegedly ineffective assistance during plea negotiations and sentencing. Thus, they do not fall within the scope of her collateral-attack wavier.

B. *Ineffective Assistance of Counsel*

Robinson asserts that Mr. Inge was ineffective because he (1) misrepresented Robinson's sentencing exposure when advising her to plead guilty, (2) did not argue that Robinson should

5

receive a four-level decrease in her base-offense level for playing a "mitigating" role in the drug conspiracy, (3) did not tell Robinson about the bond revocation hearing and did not object to the recalculated guidelines range in her PSR, and (4) did not argue that her guideline range violated the rule announced in *Alleyne v. United States*, --- U.S. ---, 133 S. Ct. 2151 (2013). *See* Pet. 3–4, 4–5, 6–7.

To survive the Government's motion to dismiss, Robinson must allege facts that, if true and not directly contradicted by her earlier testimony, *Nelson v. United States*, No. 7:07cv141, 2007 WL 2344985, at *3, *5 (W.D. Va. Aug. 15, 2007) (Conrad, J.) (noting that, absent "extraordinary circumstances," allegations that directly contradict the prisoner's earlier testimony "are always 'palpably incredible' and 'patently frivolous or false'" (quoting *Lemaster*, 403 F.3d at 221)), would show that counsel's performance was both objectively unreasonable and prejudicial, *see Strickland v. Washington*, 446 U.S. 668, 687 (1984). In the plea context, "prejudicial" means there is a reasonable probability that, but for counsel's errors, Robinson would have rejected the plea deal and insisted on going to trial. *See United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In the sentencing context, "prejudicial" means there is a reasonable probability that, but for counsel's errors, Robinson would have received a shorter sentence. *See Glover v. United States*, 531 U.S. 198, 202–04 (2001); *United States v. Curtis*, 360 F. App'x 413, 414–15 (4th Cir. 2010) (per curiam). A reasonable probability is a "probability sufficient to undermine confidence in the outcome."[2] *Strickland*, 466 U.S. at 694.

---

[2] The Court need not evaluate counsel's performance if the record conclusively shows that his alleged errors, even if unreasonable, did not prejudice Robinson. *See United States v. Lafferty*, No. 7:11cr8, 2013 WL 123063, at *3 (W.D. Va. Jan. 9, 2013) (citing *Strickland*, 466 U.S. at 697).

6

*1. Plea Advice*

Robinson faced ten years to life in prison if convicted of conspiring to distribute at least 500 grams of a substance containing methamphetamine. Plea Agmt. 1 (citing 21 U.S.C. §§ 846, 841(b)(1)(A)); Plea Hr'g Tr. 9, 21, 40. The parties agreed that, under guideline section 2D1.1, an amount of "more than 1.5 but less than 5 kilograms of meth mixture" should apply for purposes of calculating Robinson's base offense level. Plea Agmt. 3. But they also recognized that the Court was not bound by this recommendation and could sentence Robison up to the statutory maximum. *See id.* Robinson asserts that Mr. Inge told her the Court would sentence her to two years in prison if she pled guilty under this agreement. *See* Pet. 3; Reply Br. 1, 3–4. She also asserts that Mr. Inge "told her that she wouldn't be held responsible for" the 1.5 to 5 kilograms meth mixture "as far as sentencing was concerned." Pet. 6. Mr. Inge disputes Robinson's first assertion and does not respond to her second assertion. *See* Inge Aff. 1–2, ECF No. 63-1.

An attorney's unreasonably bad advice about sentencing exposure certainly can violate the defendant's right to effective assistance of counsel when deciding whether to plead guilty. *See United States v. Lewis*, 477 F. App'x 79, 81–82 (4th Cir. 2012). Robinson's description of Mr. Inge's alleged advice, however, "directly contradict[s her] sworn statements made during a properly conducted Rule 11 colloquy." *Nelson*, 2007 WL 2344985, at *3.

Judge Conrad and Robinson thoroughly discussed her sentencing exposure before the Court accepted her guilty plea. *See* Plea Hr'g Tr. 9–10, 11, 14, 17–23, 33, 35, 40. Four separate times, Robinson confirmed her understanding that she faced at least ten years in prison if she pled guilty to Count One. *See id.* at 9, 21–22, 33, 40. She also acknowledged that she would be held responsible for conspiring to distribute between 1.5 and 5 kilograms of a mixture containing methamphetamine, even if she did not personally have access to that much meth. *See id.* at 10,

7

19–20, 35, 37–38. Finally, Robinson confirmed that no one—including Mr. Inge—had promised that she would receive a particular sentence, a sentence within a particular guideline range, or a term of imprisonment below the ten-year mandatory minimum. She also understood that her sentence could be different than any estimate Mr. Inge gave her. *See id.* at 11, 14, 18–20, 20–22. Robinson's claims that Mr. Inge was ineffective during plea negotiations are "palpably incredible and patently frivolous or false" compared to this testimony. *Nelson*, 2007 WL 2344985, at *5 (internal quotation marks omitted). I recommend that they be summarily dismissed. *See id.*

### 2. Downward Departure

Robinson next asserts that Mr. Inge was ineffective because he did not argue that her offense level should be reduced by four levels to reflect her "mitigating" role in the drug conspiracy. *See* Pet. 4–5. She argues that she was entitled to this departure because she "wasn't some big time drug dealer, . . . wasn't responsible for large quantity drug buys[] or involved in everyday operations," and was merely "spurred on by [her] need to 'get a fix.'" *Id.* at 5.

Guideline section 3B1.2 allows for a four-level decrease in the defendant's base-offense level if she "was a minimal participant in any criminal activity." U.S.S.G. § 3B1.2(a) (2012). The section is intended to benefit "defendants who are plainly among the least culpable of those involved" in group criminal activity. *Id.* cmt. 4. A defendant who sells drugs is not entitled to any mitigating role adjustment, let alone a four-level adjustment for playing a "minimal" role in a drug conspiracy. *United States v. Whitehead*, 449 F. App'x 257, 258 (4th Cir. 2011) (rejecting two-level reduction for minor role); *United States v. Young*, 43 F. App'x 544, 545 (4th Cir. 2002) (citing *United States v. Brooks*, 957 F.2d 1138, 1149 (4th Cir. 1992)); *United States v. Glasco*,

917 F.2d 797, 800 (4th Cir. 1990). Robinson admitted under oath that she sold drugs as part of this conspiracy:

> THE COURT: Now, you say that you worked for other people. But did you really collaborate with other people? Did you have an agreement to sell meth with other individuals?
>
> MR. INGE: Tell him what you did.
>
> (Discussion off the record between Mr. Inge and the defendant).
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: How did you work with other people?
>
> THE DEFENDANT: I would get drugs for other people and I would either make money on it or make money for my own drugs.
>
> THE COURT: Did you have an arrangement with these people? Did you know how much you were going make when they entrusted drugs for you to sell?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did they tell you who to sell to and what people to deal with and what people to avoid?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Did you have some understanding, based on your relationship with these other people, as to how much you were going to charge for the drugs?
>
> THE DEFENDANT: Yes, sir.

Plea Hr'g Tr. 35–36. Robinson also agreed with the Government's proffer that she "was essentially a mid-level dealer" in the conspiracy between 2009 and 2011. *See* Plea Hr'g Tr. 36, 38. Robinson's testimony conclusively shows that she was not entitled to a minimal-role reduction. Thus, I cannot find that Mr. Inge's representation was deficient or, even if it were, that Robison suffered prejudice. Accordingly, I recommend that this ineffective-assistance claim be dismissed. *See Gillispie v. United States*, No. 7:07cv201, 2007 WL 4125384, at *2–3 (W.D. Va. Nov. 20, 2007) (summarily dismissing an ineffective-assistance claim based on counsel's failure to make a sentencing recommendation for which there was no obvious basis).

9

### 3. Obstruction Enhancement

Robinson also argues that Mr. Inge was ineffective because he did not tell her about the bond revocation hearing and did not object to the guidelines range in her PSR that reflected her failure to appear. *See* Pet. 4–5. Mr. Inge avers that he "advised Ms. Robinson of this hearing by telephone . . . and by letter." Inge Aff. 4. In her reply brief, Robinson clarified that she is challenging Mr. Inge's failure to object to the higher guideline range even though "she told him that she wasn't aware of the [court] date," not whether Mr. Inge called or mailed a letter about the hearing. Reply Br. 2.

Guideline section 3C1.1 provides for a two-level increase in the base-offense level when the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" if the obstructive conduct relates to the defendant's offense of conviction and any relevant conduct, or a closely related offense. U.S.S.G. § 3C1.1 (2012). The enhancement covers "willfully failing to appear, as ordered, of a judicial proceeding," *id.* cmt. 4(E), or "any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense," *id.* cmt. 4. "Willfully" means that the defendant "consciously acted with the purpose of obstructing justice." *United States v. Thorson*, 633 F.3d 312, 320 (4th Cir. 2011) (internal quotation marks and brackets omitted); *see also United States v. Lara*, 472 F. App'x 247, 249 (4th Cir. 2012) (per curiam) (finding that Lara acted willfully when he fled the state knowing "he had been indicted, an arrest warrant had been issued, and his attorney had arranged for him to surrender voluntarily"); *United States v. Hess*, 402 F. App'x 751, 753 (4th Cir. 2010) (per curiam) (finding that Hess's unjustified failure to appear showed that he acted willfully).

10

Robinson says that Mr. Inge was ineffective because he did not object to the higher guideline range even though she told him that she did not know about the revocation hearing. Notably, though, Robinson did not mention this to the Court when given the chance to explain her behavior on release, including her failure to appear a month earlier:

> THE COURT: Ms. Robinson, is there any factual dispute about any of the things that the probation service says that you did? They're objective facts; it's not a gray area. They couldn't find you; they say that you absconded; they said that you tested positive for drugs; they said that you didn't file reports. . . . And I wonder, is there any factual dispute about any of those matters?
>
> THE DEFENDANT: Well, Your Honor, I didn't do any drugs to begin with, and I was in Roanoke – I mean in Galax the whole time. When I had reported home, I was – and I had asked the probation officer to come by, because I didn't have a phone, and I didn't have a phone, and I was always told "no." It wasn't that I absconded. I didn't go anywhere. And I was not on drugs, Your Honor.

Bond Revocation Hr'g Tr. 4. The probation officer then testified that Robinson stopped reporting as directed after being informed on May 13 that she tested positive for methamphetamine and cocaine. *Id.* at 5–6, 7. He also testified that Robinson promptly absconded from her approved residence and told a friend to lie about her noncompliance with her conditions of release:

> A: On June 2nd, I received a call from Donald Trotter with whom the defendant was approved to reside in Independence, Virginia. He asked if I had been in contact with Ashlei. He went on to say that Ashlei left his home the same day that she provided the positive results for the drug screen, and he had not seen her since that time. According to him, she asked him to basically lie to the probation office if we made any inquiry [about] where she was. He was supposed to tell us that she was out working if we asked.
>
> Q: Was that one of her conditions, that she was supposed to live at that address?
>
> A: Yes.
>
> Q: And not go elsewhere?
>
> A: Yes.

11

*Id.* at 7–8. Robinson did not report to probation at all after May 27, and she did not appear at her June 4 bond revocation hearing. *See id.* at 8. The police found Robinson at a house in Galax hiding "in some sort of utility closet" when they arrested her on July 2. *Id.* Robinson did not dispute the officer's testimony. *See id.* at 11–12. Judge Conrad found that Robinson tested positive for illegal controlled substances, fled her approved residence, failed to report as ordered, did not appear at her revocation hearing, and absconded for over a month before she was finally arrested. *See id.*

Judge Conrad cited the same obstructive behavior when explaining why Robinson would be sentenced to 194 months in prison—a sentence well below her final guidelines range.[3] *See* Sent. Hr'g Tr. 12–13, 15, 16 (finding that Robinson "betrayed" the Court's trust and "eluded detection" after an arrest warrant was issued). On this record, it hardly matters whether Robinson told Mr. Inge that she did not know about her revocation hearing. A defendant cannot violate the conditions of her bond while awaiting sentencing, abscond after being confronted with the violation, and then claim that she did not thwart her prosecution or sentencing or willfully fail to appear at a bond revocation hearing. The very fact of her flight after being confronted with the violation undermines Robinson's argument that she did not willfully fail to appear for a hearing addressing that violation. *See Lara*, 472 F. App'x at 249 ("While mere flight may not trigger the § 3C1.1 adjustment, flight in the circumstances that indicate deliberate obstructive conduct warrants it."); *cf. United States v. Reed*, 49 F.3d 895, 902–03 (2d Cir. 1995) (noting that consciously avoiding receiving information about a hearing may be sufficient to provide knowledge regarding the obstruction enhancement).

---

[3] Judge Conrad was not called upon to make separate findings specific to § 3C1.1. *See* Sent. Hr'g Tr. 3.

12

Moreover, Robinson owes her guideline range to her "own very bad behavior" on release both before and after she failed to appear. Sent. Hr'g Tr. 13. She tested positive for controlled substances then fled her approved residence, effectively absconding until she was arrested six weeks later. Her conduct unquestionably satisfies the criteria of § 3C1.1. *See, e.g.*, *United States v. Figuried*, 571 F. App'x 181, 183 (4th Cir. 2014) (per curiam) (upholding obstruction enhancement where the defendant "removed his ankle monitor and absconded from house arrest while awaiting sentencing"); *United States v. Manning*, 704 F.3d 584, 587 (9th Cir. 2012) (per curiam) ("Manning both fled to Mexico while on pretrial release and failed to appear at his revocation hearing, each of which qualifies as obstruction of justice."); *Lara*, 472 F. App'x at 249; *Hess*, 402 F. App'x at 753 (upholding obstruction enhancement based on Hess's "numerous pretrial release violations," including "drug use, failing to report for drug testing, and most seriously, failing to appear at a pretrial release violation hearing"); *United States v. Martinez*, 234 F.3d 1047, 1048 (8th Cir. 2000) (per curiam) (upholding obstruction enhancement where defendant failed alcohol and drug tests while under court-ordered supervision at a halfway house, absconded from the halfway house before his bond-revocation hearing, and did not appear for that hearing); *United States v. Thomas*, 72 F.3d 92, 93 (8th Cir. 1995) (per curiam) (upholding obstruction enhancement where defendant tested positive for controlled substances then absconded).

Furthermore, the facts of this case do not present an "extraordinary" situation where the obstruction enhancement and the acceptance of responsibility reduction would both apply. *See* U.S.S.G. § 3E1.1 cmt. 4; *United States v. Webb*, 564 F. Supp. 2d 573, 577 (W.D. Va. 2008). Accordingly, I find that Mr. Inge's representation was not constitutionally deficient, and, in any event, Robinson cannot show prejudice. *See Beard v. United States*, Nos. CCB-11-285, CCB-08-

13

141, 2012 WL 5878822, at *1 (D. Md. 2012) (finding that counsel was not ineffective for failing to object to an obstruction enhancement that the defendant "fully deserved"). I recommend that this ineffective-assistance claim be dismissed.

        *4.*      *Alleyne & Sentencing Enhancements*

Finally, Robinson asserts that Mr. Inge should have objected to the obstruction enhancement because it violated the rule announced in *Alleyne v. United States*. Pet. 5–7. *Alleyne* is a case about judicial fact-finding and statutory mandatory minimum sentences. 133 S. Ct. at 2163–64. It holds that any fact that triggers such a penalty is an "element" of the offense that must be alleged in a charging document and proven beyond a reasonable doubt. *Id.* at 2156, 2160–61; *see also United States v. Vasquez*, Nos. 7:09cr15, 7:13cv80619, 2013 WL 5435825, at *2 (W.D. Va. Sept. 27, 2013) (Conrad, C.J.) ("[*Alleyne*] held that any fact which subjects the defendant to a mandatory minimum sentence must either be admitted by the defendant or found by the jury beyond a reasonable doubt."). *Alleyne* does not apply where, as here, the district court sentenced the defendant in accordance with her admitted conduct and within the statutory range. *See United States v. Benn*, 572 F. App'x 167, 179–80 (4th Cir. 2014). Indeed, it has absolutely no application to the Court's consideration of the sentencing guidelines enhancement for obstructing justice. *See Ferranti v. United States*, No. 1:91cr337, 2014 WL 2967944, at *3 (E.D. Va. June 30, 2014).

By pleading guilty to the charged offense, Robinson admitted that she "conspired . . . to distribute five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine." Indictment 1; *see also* Plea Agmt. 1; Plea Hr'g Tr. 3, 9, 10, 33. The drug weight alleged in the Indictment—not the obstruction enhancement or base-offense level—triggered a mandatory minimum ten-year prison sentence under 21 U.S.C. § 841. *See* Plea

14

Agmt. 1; Plea Hr'g Tr. 9, 21–22, 33, 40; PSR 1, 14. Robinson admitted under oath that she in fact conspired to distribute at least 500 grams of a mixture or substance containing methamphetamine. Plea Hr'g Tr. 33–34, 35, 42. Indeed, she admitted that she should be held responsible for conspiring to distribute up to 5 kilograms of meth—10 times the weight charged:

> THE COURT: Now, your charge alleges that you were responsible for distribution of at least 500 grams of methamphetamine. Do you think that your conspiracy was responsible for at least that amount?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: More to the point, in your plea agreement you say that, in sentencing you, that you want the Court to consider that you should be held responsible for between 1.5 and 5 kilograms of methamphetamine as a result of your participation in this conspiracy. That's a lot of meth. Do you think that you and the coconspirators that you understood were operating were responsible for this level of methamphetamine distribution?
>
> THE DEFENDANT: Yes, sir.

Plea Hr'g Tr. 34–35. There was "no obvious basis" for invoking *Alleyne* against this record, and counsel was not ineffective for failing to do so. *See Gillispie*, 2007 WL 4125384, at *2. I recommend that this claim be dismissed.

## IV. Conclusion

The record conclusively shows that Robinson is not entitled to relief on any of her claims that Mr. Inge provided ineffective assistance of counsel. Therefore, I recommend that the Court **GRANT** the Government's motion, ECF No. 61, **DISMISS** Robinson's petition, ECF No. 52, and **STRIKE** this case from the docket.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, Chief United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTER: March 10, 2015

Joel C. Hoppe
United States Magistrate Judge